**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUZETTE WADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| TRISTAR PRODUCTS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Suzette Wade, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, George E. McLaughlin, McLaughlin Law Firm, P.C., hereby submits the following Complaint and Demand for Jury Trial against Defendant, TRISTAR PRODUCTS, INC. (hereinafter referred to as "Defendant Tristar" and "Defendant"), and alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. This is a personal injury case based on Missouri product liability law.

2. Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a wide range of consumer products, including the subject "Emeril Lagasse Pressure AirFryer Plus" which specifically includes the Model Number Y6D-AF-36B.  [Image 1]



Image 1

3.      Defendant claims that its pressure cookers are designed with several "Built-In Safety Devices,"[1]0F which purport to keep the consumer safe while using the pressure cooker. Said "safety devices" include a "Safety Lid Lock," a "Positive Pressure Mechanism," and a "Lid Positioning Sensor."[2]1F  These safety mechanisms are intended to prevent the unit from building pressure if the lid is not closed properly, as well as to prevent the lid from opening until all pressure is released.[3]

4.      Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed, and sold a product that suffers from serious and dangerous defects.  Said defects cause a significant risk of bodily harm and injury to consumers using this product.

5.      Specifically, said defects manifest themselves when, despite Defendant's claims to the contrary, the Pressure Lid of the pressure cooker is removable with built-up pressure, heat, and

---

[1]    *See*, Emeril Lagasse Pressure AirFryer Plus Owner's Manual, p. 11.  A copy of the Owner's Manual is attached hereto as "Exhibit A."
[2]    *Id.*
[3]    *Id*. at pgs. 12, 14, 19.

2

steam still inside the unit. When the Pressure Lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to erupt from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. In this case the Pressure Lid opened while the pressure cooker retained pressure, causing serious and substantial bodily injuries and damages to the Plaintiff.

6.      Defendant knew or should have known of these defects but nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective pressure cookers despite the risk of significant injuries to Plaintiff and consumers like her.

7.      As a direct and proximate result of Defendant's conduct, Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PARTIES

### Plaintiff Suzette Wade

8.      Plaintiff Suzette Wade is a citizen of the state of Missouri, residing and domiciled in Robertsville, Franklin County, Missouri.

9.      On or about January 28, 2023, Plaintiff Suzette Wade was the owner of an Emeril Lagasse Pressure AirFryer Plus, Model Number Y6D-AF-36B.

10.     On or about January 28, 2023, Plaintiff Suzette Wade suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooking lid of her Emeril Lagasse AirFryer Plus pressure cooker opening while the pressure cooker was still pressurized, resulting in its scalding hot contents erupting from the pressure cooker and onto Plaintiff.

**Defendant Tristar Products, Inc.**

11.    Defendant Tristar Products, Inc., [hereinafter at times "Tristar"] designs, manufactures, brands, markets, imports, distributes, and sells a variety of consumer products including pressure cookers and air fryers.

12.    Defendant Tristar boasts that "Superior innovation at affordable prices has enabled us to create #1 brands worldwide for more than 25 years.  With over $1 billion in retail sales, our products solve everyday problems, helping to make life easier and more enjoyable for millions of consumers."  [https://www.linkedin.com/company/tristar-products-inc/]

13.    On September 16, 2019, Tristar Products, Inc. filed with the Office of the Missouri Secretary of State an Application for Certificate of Authority For a Foreign For-Profit Corporation, stating that it was organized and existing under the laws of Florida, with its principal place of business stated to be 2620 Westview Drive, Wyomissing, Berks County, Pennsylvania 19610, its President to be Kishore Mirchandani, and its Registered Agent in the State of Missouri to be CT Corporation Systems, 120 S. Central Ave. #400, St. Louis, MO 63105.  Certificate of Authority F001333010 was issued to Tristar Products, Inc.
[Exhibit A, and
https://bsd.sos.mo.gov/Common/CorrespondenceItemViewHandler.ashx?IsTIFF=true&filedDocumentid=14842127&version=4]

14.    On October 7, 2021, Defendant Tristar Products, Inc. filed an Annual Registration Report with the office of the Secretary of State of the State of Missouri, listing its President as Kishore Mirchandani, its Principal Place of Business or Corporate Headquarters as 2620 Westview Drive, Wyomissing, Berks County, Pennsylvania 19610-1130, and CT Corporation Systems, 120

4

S. Central Ave. #400, St. Louis, MO 63105 as its registered agent in the state of Missouri. [Exhibit B]

15. Tristar Products, Inc. was administratively dissolved or revoked by the Missouri Secretary of State under the provisions of Section 351.486 or Section 351.602, RSMo, as of May 1, 2023, due to its Failure to File a Registration Report. The 2026 Florida Profit Corporation Annual Report of Tristar Products, Inc., filed with the Florida Department of State, Division of Corporations, on February 2, 2026, Document # P18000037189, discloses that Tristar Products, Inc. is a Florida Corporation, with a Principal Address of 505 Maitland Avenue, Suite 1170, Altamonte Springs, FL 32701, and its CEO as Kishore Mirchandani.

16. On February 18, 2022, Spectrum Brands Holdings, Inc., a Delaware corporation, with its principal place of business located at the address of 3001 Deming Way Middleton, WI 53562-1431, announced its acquisition of the kitchen appliances and cookware categories of Tristar Products, Inc., including the Emeril Lagasse brand.

17. Tristar Products, Inc. remains a viable legal entity.

18. Upon information and belief Tristar Products, Inc. is the entity that would be legally liable for any defective products it designed, manufactured, branded, marketed, imported, distributed, or sold prior to February 18, 2022.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interests and costs, and there is complete diversity of citizenship between the parties.

20. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, specifically in

Robertsville, Franklin County, Missouri, where the incident involving the subject Emeril Lagasse Pressure AirFryer Plus occurred.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because at the time of the events or omissions giving rise to the claim Tristar Products, Inc. was registered with the office of the Secretary of State of Missouri to do business in the state of Missouri, and had designated CT Corporation System, 120 S. Central Ave. #400, St Louis, MO 63105, as its Registered Agent in the state of Missouri.

### FACTUAL BACKGROUND

22.     The product at issue is the Emeril Lagasse Pressure AirFryer Plus, Model Number Y6D-AF-36B, Serial Number 9190_YLS191031, SN#WM 0137103, which was designed, manufactured, imported, marketed, and distributed by Defendant.  [Images 2 and 3]

       

Image 2                              Image 3

23.     The product at issue is the Emeril Lagasse Pressure AirFryer Plus, Model Number Y6D-AF-36B, Serial Number 9190_YLS191031, SN#WM 0137103, and was designed, manufactured, branded, marketed, imported, distributed, and sold prior to February 18, 2022.

24.    On or about January 28, 2023, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid opening while the pressure cooker was pressurized, causing its scalding hot contents to erupt from the product and onto Plaintiff.

25.    The incident occurred as a result of the failure of the pressure cooker's "Built-In Safety Devices," which are intended to prevent the lid from opening while the unit is pressurized, and keep the consumer safe while using the pressure cooker.

26.    In addition, the incident occurred as the result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

27.    Defendant Tristar is engaged in the business of designing, manufacturing, branding, warranting, marketing, importing, distributing, and selling pressure cooker products, including Emeril Lagasse Pressure AirFryer Plus products, and the specific product that is the subject of this litigation.

28.    Defendant aggressively warrants, markets, advertises, and sells its Emeril Lagasse Pressure AirFryers as revolutionary, pro-grade kitchen appliances.  In an infomercial advertising the Emeril Lagasse line of Pressure AirFryers, Defendant boasted that renowned chef Emeril Lagasse is "revolutionizing your kitchen with his Pressure AirFryer."3F[4]  In promoting these products, Emeril Lagasse himself goes on to say, "trust me, the first time you work with a pro-grade appliance you'll be hooked"4F[5] and "you won't take it off your counter."5F[6]

---

[4]    https://www.youtube.com/watch?v=yTIEY_wh1Rw&list=PL29WOZ8ueu0o3JUDvKZOpryB TGQF hyAk (video with a runtime of 28:30) at 1:48 – 1:51 (Viewed February 16, 2026).
[5]    *Id*. at 2:02 – 2:07.
[6]    *Id*. at 23:11 – 23:13.

29.     In an advertisement for the Home Shopping Network, Chef Emeril Lagasse assures consumers that the Pressure AirFryers are safe, stating "We've taken all the fright out of this, okay?  Years and years ago, as you know, pressure cookers had a bad rap because…it was like a rocket ship.  We have done with technology and…eliminated all of that stuff so that you can feel comfortable cooking all of these functions at home with the family."6F[7]

30.     According to the Owner's Manual accompanying each individual unit sold, the product purports to have "Built-In Safety Devices," misleading the consumer into believing that the Pressure AirFryers are reasonably safe for their normal, intended use.  Said "Safety Devices" include, but are not limited to, the following:

- Safety Lid Lock: The Pressure Lid tabs connect under the Base tabs to lock the Pressure Lid to the Base when fully closed.

- Positive Pressure Mechanism (Float Valve): When the pressure reaches a required point, the pressure lifts the Float Valve up, contacting the Locking Pin.

- Lid Positioning Sensor: A magnetic sensor indicates whether the Lid is fully closed.  The Unit will beep and display "LID" when the Lid is not locked or is not required for a preprogrammed setting.7F[8]

31.     Additionally, the Owner's Manual claims that the Pressure AirFryer "has a safety mechanism that prevents the Pressure Lid from opening until the pressure has been lowered"8F[9]

---

[7]  https://www.youtube.com/watch?v=IqIlzpYAdZw  (video with a runtime of 14:43) at 11:47-12:09 (Viewed February 16, 2026).
[8]  See Pressure AirFryer Plus Owner's Manual, p. 12.
[9]  *Id.* at p. 14

and that "[t]he Magnetic Safety Sensor assures the Pressure Lid is properly closed before the Unit can pressurize."9F[10]

32.     Defendant further, at various times, represented and claimed the following about the Emeril Lagasse Pressure AirFryer to users and consumers:

(a) Two-Step Security Reset for Quick Release that ensures the Lid will not slide to open if there is steam/pressure inside the Emeril Lagasse Pressure AirFryer;

(b) The Emeril Lagasse Pressure AirFryer will not be able to pressurize if the lid is not on properly;

(c) There is a magnetic safety sensor that assures the lid is properly closed before the unit can pressurize;

(d) The Emeril Lagasse Pressure AirFryer has a safety mechanism that prevents the Lid from opening until the pressure has been lowered.  When all the pressure is released from the Emeril Lagasse Pressure AirFryer, the digital display will turn blue. This lets you know the unit is not under pressure and that it is safe to open;

(e) Operating your Emeril Lagasse Pressure AirFryer is easy;

(f) When the pressure and steam have been fully released, it takes almost no effort to open the lid;

---

[10]  *Id.* at p. 19.

(g) Twelve built-in safety features include Delay Cooking Time up to 24 hours, a manual setting for up to 12 hours of total cook time, Safety Lock Lid with Magnetic Switch, Lid Positioning Sensor, Anti-Blockage Guard, Pressure Controller, and Cool-to-the-Touch Handle;

(h) Add the ingredients, press the button, and walk away.  The pot does all the thinking and then it does all the work;

(i) Anyone can press a button and that's all it takes; and,

(j) The Emeril Lagasse Pressure AirFryer does it all…And the best part is, I don't have to think about it.  I just press a button.

33.   Plaintiff purchased and used the Emeril Lagasse Pressure AirFryer Plus with the reasonable expectations that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

34.   Plaintiff used her Emeril Lagasse Pressure AirFryer Plus for its intended purpose of preparing food and did so in a manner that was reasonable and foreseeable by Defendant Tristar.

35.   However, the aforementioned Pressure AirFryer was defectively designed and manufactured by Defendant in that it failed to properly function as to prevent the Pressure Lid opening while the unit remained pressurized, during the ordinary, foreseeable use of cooking food with the product, placing Plaintiff in danger while using the product.

36.   Defendant's Emeril Lagasse Pressure AirFryers have defects that make them unreasonably dangerous for their intended use by consumers because the Pressure Lid can be rotated and opened while the unit remains pressurized.

10

37.     Further, Defendant's representations about "safety" are not just misleading, they are flatly wrong and put innocent consumers like Plaintiff directly in harm's way.

38.     Economic, safer alternative designs were available that could have prevented the Emeril Lagasse Pressure AirFryer Plus's Pressure Lid from being rotated and opened while pressurized.

39.     As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous product, which resulted in significant and painful bodily injuries upon Plaintiff's removal of the Pressure Lid from the product.

40.     Consequently, Plaintiff in this case seeks damages resulting from the use of Defendant's Emeril Lagasse Pressure AirFryer Plus as described above, which has caused Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## STANDARD FOR PRESSURE COOKER SAFETY

41.     UL [f/k/a Underwriters Laboratories] is an industry supported business, that, among other things, provides testing and engineering services to manufacturers.   Its testing and certification services assist its customers to meet regulatory requirements and consumer demand for safe, trustworthy products.

42.     Most retailers in the United States require that electrical appliance products they sell be UL Certified or have the equivalent of a UL Certification.

11

43. The applicable industry standard for safety of pressure cookers is found in UL 136 Standard for Safety, Pressure Cookers.

44. The American National Standards Institute [ANSI] oversees standards and conformity assessment activities in the United States.

45. ANSI's mission is to enhance both the global competitiveness of U.S. business and the U.S. quality of life by promoting and facilitating voluntary consensus standards and conformity assessment systems and safeguarding their integrity.

46. ANSI has approved UL 136 Standard for Safety, Pressure Cookers as ANSI/UL 136-2010.

47. UL 136 Standard for Safety, Pressure Cookers, provides, in part:

4.3 The cover shall be constructed to comply with one of the following:

a) When the cover is opened the maximum normal operating pressure shall be released before the fastening means is fully disengaged;

b) The cover shall be removable only after the pressure within the cooker is zero (0) psig; or

c) The opening of the cover when the cooker is under pressure shall not result in hazardous displacement of the cover or the displacement of steam or water.

48. UL 136 Standard for Safety, Pressure Cookers, also provides, in part:

9.1 An ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons. The

12

propelling of a loosened cover and the escape of steam or hot water

are examples of this risk.

49.     Industry standards for safety of pressure cookers require that the subject Emeril Lagasse Pressure AirFryer Plus comply with ANSI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

50.     The Emeril Lagasse Pressure AirFryer Plus was not certified to comply with UL 136 Standard for Safety, Pressure Cookers.

51.     Defendant did not require that its Emeril Lagasse Pressure AirFryer Plus comply with UL 136 Standard for Safety, Pressure Cookers.

52.     Defendant did not submit its Emeril Lagasse Pressure AirFryer Plus to Underwriters Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

53.     Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus, Defendant knew or should have known that its Emeril Lagasse Pressure AirFryer Plus did not comply with ANSI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

**SUBJECT EMERIL LAGASSE PRESSURE AIRFRYER PLUS**

54.     The Emeril Lagasse Pressure AirFryer Plus, that is the subject of this civil action, is a Y6D-AF-36B, Serial Number 9190_YLS191031, SN#WM 0137103.

55.     Defendant designed the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action.

56.     Defendant manufactured the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action, or had it manufactured for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

57.     Defendant Tristar imported the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action.

58.     Defendant branded the product as an Emeril Lagasse Pressure AirFryer Plus.

59.     Defendant Tristar imported to the United States the Emeril Lagasse Pressure AirFryer Plus that is the subject of this civil action, or had it imported to the United States for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

60.     Defendant marketed the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action.

61.     Defendant Tristar distributed the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action, or had it distributed for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

62.     Defendant sold the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action, or had it sold for it under a contract or supply agreement with a third party, Walmart, that had no role in the design or manufacture of the product.

63.     Defendant Tristar was a nonmanufacturing entity in the chain of distribution of the Emeril Lagasse Pressure AirFryer Plus involved in the incident that is the subject of this civil action.

64.     Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus Defendant knew that the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus could be opened while the cooker's contents were under pressure.

65.     The subject Emeril Lagasse Pressure AirFryer Plus did not comply with the requirements of UL 136 Standard for Safety, Pressure Cookers.

66.	Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus Defendant knew or should have known that its Emeril Lagasse Pressure AirFryer Plus did not comply with UL 136 Standard for Safety, Pressure Cookers.

67.	Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus Defendant knew that the product did not comply with industry standards for the safety of pressure cookers.

68.	Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus Defendant knew that users of this product had been seriously injured by the Pressure Lid of the product opening while the cooker's contents were under pressure.

69.	Prior to the sale of the subject Emeril Lagasse Pressure AirFryer Plus Defendant did not stop the distribution or sale of these products.

70.	Prior to January 28, 2023, Defendant knew that the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus did not comply with the requirements of UL 136.

71.	Prior to January 28, 2023, Defendant knew that the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus did not comply with industry standards for the safety of pressure cookers.

72.	Prior to January 28, 2023, Defendant knew that users of this product, the Emeril Lagasse Pressure AirFryer Plus, had been seriously injured by the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus opening while the cooker's contents were under pressure.

73.	Prior to January 28, 2023, Defendant did not warn consumers that the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus may open while the cooker's contents were under pressure.

74.    Prior to January 28, 2023, Defendant did not recall the Emeril Lagasse Pressure AirFryer Plus because it knew that the Pressure Lid may open while the cooker's contents were under pressure.

75.    Prior to the manufacture of the Emeril Lagasse Pressure AirFryer Plus, safer alternative designs for the Pressure Lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Tristar's competitors.

76.    Prior to the manufacture of the Tristar Pressure Cookers that were branded as Emeril Lagasse Pressure AirFryer Plus, safer alternative designs for the Pressure Lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Tristar's competitors.

77.    Prior to the manufacture of the Tristar Pressure Cookers branded as the Emeril Lagasse Pressure AirFryer Plus, Tristar chose not to incorporate available safer alternative designs and safety features into the design of the Pressure Lid locking system of its Emeril Lagasse Pressure AirFryer Plus pressure cookers.

78.    Prior to the manufacture of the Tristar Pressure Cookers branded as the Emeril Lagasse Pressure AirFryer Plus, Tristar chose not to incorporate available safer alternative designs and safety features into the manufacture of the Pressure Lid locking system of its Emeril Lagasse Pressure AirFryer Plus pressure cookers.

79.    Prior to the manufacture of the subject Emeril Lagasse Pressure AirFryer Plus safer alternative designs for the Pressure Lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Tristar's competitors.

80.    By June of 2015, Tristar was receiving notice from users of its pressure cookers that the Pressure Lids of its products were opening while their contents were under pressure, the

superheated contents erupted from the pot, and caused serious burn injuries to the user of their products.

81.    Defendant Tristar knew or should have known that its Emeril Lagasse Pressure AirFryer Plus products possessed defects that pose a serious safety risk to Plaintiff and the public. Nonetheless, Defendant Tristar continued to ignore and/or conceal its knowledge of the products' defects from the general public and continued to generate a substantial profit from the sale of these products, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and other consumers.

82.    Lawsuits have been filed in United States District Courts throughout the United States alleging failure of Defendant Tristar's pressure cookers models with the same or substantially similar design defects, including, but not limited to:

a)  *Ninfa Vasquez and Jose Vasquez v. Tristar Products, Inc.* (Filed in the Southern District of Texas Brownsville Division, June 12, 2016.) ("Mrs. Vasquez used the cooker for the first time on August 2, 2014 and followed all instructions enclosed with the cooker. She intended to prepare pinto beans for her family's dinner that evening. Approximately two hours after unplugging the cooker, suddenly and without warning, the lid blew off of the cooker, and the pinto beans burst out of the cooker onto Mrs. Vasquez, resulting in extensive and severe burns to her body.") Plf. Compl. ¶ 10.

b)  *Serguei Tchernykh & Liliya Bekteva v. Bed Bath & Beyond, Inc. v. Tristar Products, Inc.* (Filed in the Southern District of Florida Miami Division, June 24, 2015.) ("As a result of a malfunction of the subject

17

Pressure Cooker [on September 30, 2015], Plaintiff sustained severe burns.") Plf. Compl. ¶ 7.

c) *Ana R. Frias, Individually and on behalf of her infant child, Annel Frias v. Tristar Products, Inc.* (Filed in the Western District of Texas San Antonio Division, January 29, 2016.) ("At around 11:30 AM [on December 22, 2015] when Ana Frias attempted to remove the lid from the subject pressure cooker, the subject pressure cooker exploded, causing scalding hot liquid and steam to fly up and out of the pressure cooker, and onto the Plaintiff, Ana Frias and infant Annel Frias.") Plf. Compl. ¶ 5.

d) *Tonia Kaye Carroll & Kerry Dale Carroll v. Tristar Products, Inc.* (Filed in the Middle District of Tennessee Columbia Division, February 17, 2016.) ("On or about March 18, 2015 Plaintiff Tonia Carroll was seriously injured during normal and ordinary use of the product when the Power Cooker exploded as the result of a malfunctioning lid. Specifically, and because of its defect and in conflict with the representations contained in the instruction manual, the lid was not prevented from opening while the unit was under pressure.") Plf. Compl. ¶ 7.

e) *Melanie Landrum v. Tristar Products, Inc.* (Filed in the Eastern District of Michigan Southern Division, March 24, 2016.) ("On or about May 12, 2014, Plaintiff was cooking food in the Defendant's Power Cooker. Per the instructions, after the Power Cooker light indicated the food was

18

cooked, Plaintiff repeatedly slid the pressure release lever to release any remaining pressure.  After waiting approximately fifteen more minutes, Plaintiff again slid the pressure release lever back and forth.  As Plaintiff opened the unit, the food suddenly exploded out of the unit, spraying all over the kitchen walls and ceiling, and causing serious burn injuries to Plaintiff as described below.")  Plf. Compl. ¶¶ 14, 15.

f) *Ayesha Mack, individually, and as Next Friend of DM, a minor v. Tristar Products, Inc*.  (Filed in the Eastern District of Michigan Southern Division, March 30, 2016.)  ("On or about October 4, 2015, Plaintiff was cooking roasted potatoes in the Defendant's Power Cooker.  Per the instructions, after the Power Cooker light indicated the food was cooked, Plaintiff repeatedly slid the pressure release lever to release any remaining pressure and fully opened the valve.  After waiting several more minutes, Plaintiff looked at the pressure relief valve and saw no steam coming out of the valve.  Suddenly, as Plaintiff opened the unit, the food exploded out of the unit, spraying all over the kitchen walls and ceiling, and causing serious burn injuries to Plaintiff and her five-year-old daughter, DM…")  Plf. Compl. ¶¶ 14, 15.

g) *Kenya Allen & Loren Allen v. Tristar Products, Inc*.  (Filed in the Northern District of Georgia Atlanta Division, August 18, 2016.)  ("At approximately 7:30 p.m. on March 26, 2016, Mrs. Allen was using the subject pressure cooker to prepare a meal for her family that was coming into town the following day for an Easter holiday celebration.  However,

19

with no active inputs by Plaintiff or anyone else, the subject pressure cooker exploded on the stovetop in the Plaintiff's kitchen during this ordinary use, with the top of the pressure cooker blowing off the remainder of the product, causing scalding hot liquid, contents and steam to fly up and out of the pressure cooker, and onto Mrs. Allen, who was standing nearby in the kitchen innocently speaking with her sister on the telephone and not engaging the cooker.")  Plf. Compl. ¶ 8.

h)  *DLP, a minor child by and through April Presnell, his mother, custodial parent, and next friend, v. Tristar Products, Inc.*  (Filed in the Northern District of Georgia Gainesville Division, November 8, 2016.)  ("At approximately 7:00 p.m. on July 24, 2016, Ms. Payne was using the subject pressure cooker to prepare a meal for her family as well as for DLP.  However, even after unplugging the pressure cooker and allowing it to sit for over one hour, the subject pressure cooker exploded on the countertop in Ms. Payne's kitchen during this ordinary use, with the top of the pressure cooker blowing off the remainder of the product, causing scalding hot liquid, contents and steam to fly up and out of the pressure cooker, and onto DLP, who was standing nearby in the kitchen and not engaging the cooker.")  Plf. Compl. ¶ 7.

i)  *Lori Haines v. Tristar Products, Inc.*  (Filed in the Southern District of Texas Brownsville Division, December 22, 2016.)  ("Ms. Haines used the cooker on January 13, 2015 and followed all instructions enclosed with the cooker.  She intended to prepare stew for her family's dinner

20

that evening. She first cooked the meat for the stew for twenty minutes in the cooker. She then opened the cooker and added vegetables and started the cook cycle again. After she finished the second cook cycle, she and her son released steam from the cooker and she held the cooker while her son began to open the lid. As he started to open the lid, it burst open, spraying her with the scalding hot contents and resulting in extensive and severe burns to her arm, chest, and stomach.") Plf. Compl. ¶ 12.

j) *Jeremy Marcotte v. Tristar Products, Inc.* (Filed in the Western District of Louisiana Lafayette Division, February 27, 2017.) ("On or about May 19, 2016 suddenly and without warning, the lid blew off of the cooker, and the contents burst out of the cooker onto Mr. Marcotte, resulting in extensive and severe burns to his body.") Plf. Compl. ¶ 8.

k) *Carolyn Johnson and Jessie Mayberry v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., Zhongshan Jincheng Electric Appliance Co., LTD., XYZ Corporations 1-5; Does 1-5.* (Filed in the District of New Jersey Newark Division, July 24, 2017.) ("On or about July 25, 2016, Plaintiff Carolyn Johnson and Jessie Mayberry, were using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to

21

fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl. ¶¶ 23, 24.

l) *Beth Morales v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., Zhongshan Jincheng Electric Appliance Co., LTD., XYZ Corporations 1-5; Does 1-5.* (Filed in the Southern District of Florida, August 11, 2017.)  ("On or about October 30, 2016, Plaintiff was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker.  While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl. ¶¶ 23, 24.

m) *Jeni Chaney and Brian Burnett v. Tristar Products, Inc., et. al.* (Filed in the United States District Court for the Middle District of Florida, Tampa Division, September 22, 2017.)  ("On or about November 26, 2016, Plaintiff, Jeni Chaney and Brian Burnett, were using the Pressure Cooker while in Pasco County and followed all enclosed instructions with the Pressure Cooker.  While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl., ¶¶ 27, 28.

n) *Catherine Komertz and Scott Miller v. Tristar Products, Inc., et. al.* (Filed in the United States District Court for the Middle District of

Florida, Tampa Division, September 22, 2017.) ("On or about April 22, 2017, Plaintiff Catherine Komertz and Scott Miller, were using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.") Plf. Compl., ¶¶ 27, 28.

o) *Elizabeth Pina v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QVC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., Zhongshan Jincheng Electric Appliance Co., LTD., XYZ Corporations 1-5; Does 1-5.* (Filed in New Jersey District Court, September 26, 2017.) ("On or about October 10, 2015, Plaintiff, ELIZABETH PINA, was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto Plaintiff.") Plf. Compl. ¶¶ 23, 24.

p) *Fabian Marroquin v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QVC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., and Zhongshan Jincheng Electric Appliance Co., LTD.* (Filed in New Jersey District Court, March 1, 2018.) (" On or about March 7, 2016, Plaintiff

23

FABIAN MARROQUIN, was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker.  While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl. ¶¶ 20, 21.

q) *Lester Prater v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, Pro QVC International, LTD., Zhongshan Jinguang Household Appliance Manufacture Co., LTD., and Zhongshan Jincheng Electric Appliance Co., LTD., Ningbo NDL Electric Appliances Co., LTD, and Zhongshan Yalesi Electric Co., LTD.* (Filed in New Jersey District Court, April 19, 2018.)  ("On or about April 24, 2017, Plaintiff LESTER PRATER, was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker. While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl. ¶¶ 26, 27.

83.    Lawsuits likewise have been filed in state courts throughout the United States alleging failure of Defendant Tristar's pressure cooker models with the same or substantially similar design defects, including, but not limited to:

a) *Angela Strickland and Mack Edwards v. Tristar Products, Inc.* (Filed in the State Court of Chatham County, State of Georgia, January 11, 2016, notice of removal filed in the Southern District of Georgia,

24

February 10, 2016.)  ("While the Power Cooker XL was operating, it exploded in front of Plaintiff, causing them serious injuries.  As a result of their burns, Plaintiffs were transported to the Joseph M. Still Burn Center in Augusta, Georgia where they both underwent skin grafts and have endured significant mental and physical pain and suffering.")  Plf. Compl., ¶¶ 15, 16.

b) *Samantha Williams v. Tristar Products, Inc.*  (Filed in the Superior Court of Lanier County, State of Georgia, February 27, 2017, notice of removal filed in the Middle District of Georgia, April 20, 2017.)  (On or about February 14, 2017, Plaintiff "approached the subject pressure cooker and lightly pressed the cancel button when suddenly and without warning, the subject pressure cooker exploded on the countertop during this ordinary use, with the top of the subject pressure cooker blowing off the remainder of the product, causing the scalding hot beef stew to fly up and out of the subject pressure cooker and onto [her]."  As a result, Plaintiff claims that she "suffered severely painful and disfiguring second-degree burns, scalding her neck all the way down to her chest to above the belly button, both breasts, and her entire right arm from her shoulder down to the wrist," and that she "was experiencing such excruciating pain that the medical personnel [that subsequently treated Plaintiff] had to put her under anesthesia to continue with their assessment and treatment of the burns.").  Plf. Compl., ¶¶ 13-16.

25

c) *Lyndsay Moyer and Ryan Moyer v. Wal-Mart Stores East, LP, et. al.* (Filed in the Philadelphia Court of Common Pleas, March 10, 2017) (On or about March 30, 2015 "Ryan then turned the lid of the Pressure Cooker in reasonable and normal manner to open it, freely and without force. Immediately upon opening the lid the Pressure Cooker exploded sending its scalding hot liquid contents all over Lyndsay including her entire chest and neck and both arms and hands.") Plf. Compl., ¶ 24.

d) *Nushon Scales v. Tristar Products, Inc., and Wal-Mart Stores, Inc.* (Filed in the Superior Court of Connecticut at Bridgeport, State of Connecticut April 6, 2017, notice of removal filed in Connecticut District Court, May 9, 2017.) ("On or about April 9, 2015, the Plaintiff was using said Pressure Cooker to cook vegetables when it suddenly and without warning exploded, spraying the Plaintiff with steam, hot liquid and/or cooking debris causing the injuries and damages hereinafter set forth.") Plf. Compl., ¶ 10.

e) *Sandra Pulgarin v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co., LTD, and Does 1 to 100, inclusive.* (Filed in the Superior Court of California, Los Angeles County Central District, April 26, 2017, notice of removal filed in California Central District Court, July 6, 2017.) ("[O]n or about May 11, 2015…Plaintiff was burned, bruised, and suffered physical injury…The product that caused the [incident] – a Power Pressure Cooker XL, model number PCXL-PRO6…Plaintiff's injuries were caused when the [subject product] suddenly released

26

steam and superheated air and food from the body of the [subject product], burning her.")  Plf. Compl., ¶ 1.

f)  *Maria Bownes v. Tristar Products, Inc., Zhongshan USATA Electric Appliance Co. LTD, and Pro QC International, LTD.*  (Filed in the Superior Court of New Jersey Law Divisions for Essex County, State of New Jersey May 8, 2017, notice of removal filed in New Jersey District Court, May 24, 2017.)  ("On or about May 30, 2016, Plaintiff [Maria Bownes], was using the Pressure Cooker and followed all instructions enclosed with the Pressure Cooker.  While using the Pressure Cooker to prepare a meal, it suddenly and without warning exploded, causing scalding hot liquid, contents, and steam to fly out of the Pressure Cooker and onto the Plaintiff.")  Plf. Compl., ¶¶ 16,17.

g)  *Latosha Galloway, an individual v. Tristar Products, Inc., a Pennsylvania corporation; and Bed Bath & Beyond, Inc., d/b/a BBB, a New York Corporation.*  (Filed in the Superior Court of the State of Washington for King County, May 30, 2017, notice of removal filed in the Western District of Washington, June 29, 2017.)  ("On or about February 12, 2017, Latosha Galloway was in her home and decided to use the subject Pressure Cooker to prepare beef stew for her family.  Ms. Galloway placed beef into the Subject Pressure Cooker, locked the lid, and set it to cook for approximately forty minutes.  Ms. Galloway was using the Subject Pressure Cooker in a normal foreseeable fashion and in accordance with its intended purpose.  After a few minutes, Ms.

27

Galloway heard a strange steaming noise emitting from the Subject Pressure Cooker, which she had never heard before.  She approached the Subject Pressure Cooker and noticed steam being released from an odd place on the Subject Pressure Cooker.  Ms. Galloway unplugged the Subject Pressure Cooker, and waited a minute, watching the Subject Pressure Cooker.  After a minute, Ms. Galloway slightly tapped the lid's handle to see whether the lid was still locked into the secure position; it was not…Ms. Galloway quickly moved the handle back to the locked position, when suddenly and without warning, the Subject Pressure Cooker exploded on the countertop during ordinary use, with the top of the Subject Pressure Cooker blowing off the remainder of the product, causing the scalding hot beef, water, and steam to fly up and out of the Subject Pressure Cooker and onto Ms. Galloway.")  Plf. Compl., ¶ 15.

h) *Amanda Olano v. Tristar Products, Inc.*  (Filed in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana, November 30, 2016, notice of removal filed in the Middle District of Louisiana, June 5, 2017.)  ("Plaintiff suffered 'severe and debilitating bodily injuries including first, second and third degree burns to her left hand and arm that have required medical treatment' and claims she has 'suffered disfigurement and scarring to her left hand and arm'.  Plaintiff seeks to recover for past, present and future damages of 'physical pain and suffering, mental pain, anguish and distress, loss of enjoyment of life, embarrassment, loss of income, disability…medical expenses' and

28

further seeks damages for 'impairment of future earning capacity.'") Def. Mot. Rmvl., ¶ 14.

i) *Wendy Soto v. Tristar Products, Inc., a Corporation, Costco Whole Corporation, a Corporation, Costco Wholesale Membership, Inc., a Corporation; and Does 1-100, inclusive.* (Filed in the Superior Court of the State of California, County of Santa Barbara, July 21, 2017, notice of removal filed in California Central District Court, August 29, 2017.) ("Plaintiff's Complaint alleges liability for injuries allegedly suffered as a result of a Tristar Power Pressure Cooker XL malfunction.") Def. Mot. Rmvl., ¶ 3; Plf. Compl., ¶ 8.

j) *Tawndra L. Heath, an individual v. Tristar Products, Inc., a Pennsylvania Corporation; DOE Individuals 1-10; and ROE [sic] Corporations 11-20.* (Filed in Nevada District Court, Clark County, October 12, 2017, notice of removal filed in United States District Court, District of Nevada, November 15, 2017) ("As a result of a malfunction of the Pressure Cooker, Plaintiff sustained severe burns.") Plf. Compl., ¶ 10.

k) *Jen Starr v. Tristar Products, Inc. and Walmart, Inc.* (Filed in the Fifth Judicial District Court In and For Washington County, State of Utah on December 29, 2017, notice of removal filed in the United State District Court for the District of Utah, Southern Region of the Central Division April 4, 2018") ("When Starr went to open the lid, the contents erupted

and the scalding hot food went all over Starr's chest, arms, abdomen, and kitchen.")  Plf. Second Amd. Compl., ¶ 31.

l)   A class action lawsuit was filed on May 10, 2016 in the Northern District of Ohio Eastern Division alleging similar incidents, failures and defects.  The case of *Kenneth Chapman, Jessica Vennel, and Jason Jackson, on behalf of themselves and all other similar situated v. Tristar Products, Inc.* (1:16-cv-1114) went to trial by jury on Monday, July 10, 2017, with the Honorable Judge James Gwin presiding.  The matter settled prior to the jury returning a verdict.

84.   Defendant Tristar knew or should have known of these defects but have nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

85.   Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from Plaintiff, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like him.

86.   As a direct and proximate result of Defendant's conduct, Plaintiff incurred significant and painful bodily injuries, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF'S JANUARY 28, 2023 INCIDENT

87.     On January 28, 2023, Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus as intended and in a foreseeable manner.

88.     On January 28, 2023, Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus, when the Pressure Lid of the product opened while the cooker's contents were under pressure.

89.     On January 28, 2023, Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus, for the purpose and in the manner normally intended.

90.     On January 28, 2023, Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus, when the Pressure Lid opened while the product was pressurized.

91.     On January 28, 2023, when Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus, the cover was removable before the pressure within the cooker was zero (0) psig, or otherwise low enough that the scalding contents would not erupt from the pot as the lid opened.

92.     On January 28, 2023, Plaintiff Suzette Wade was using the subject Emeril Lagasse Pressure AirFryer Plus, when the opening of the lid resulted in the eruption of the scalding contents of the pot.

93.     On January 28, 2023, an ordinary user of the subject Emeril Lagasse Pressure AirFryer Plus was capable of manually defeating the holding action of the clamping device when the pressure in the cooker was such that it created a risk of injury to persons.

94.     On January 28, 2023, due to a defect in its design, manufacture and/or warnings, the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus opened while the cooker's contents were under pressure.

31

95.     On January 28, 2023, as the Pressure Lid of the Emeril Lagasse Pressure AirFryer Plus opened, its superheated contents and steam erupted from the pressure cooker, resulting in severe burns to Plaintiff Suzette Wade's face, chest, abdomen, and arms.  Images 4-8 are referenced below.



Image 4          Image 5          Image 6          Image 7          Image 8

### FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY

### RSMo § 537.760, *et seq.*

96.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

97.     The subject Emeril Lagasse Pressure AirFryer Plus was in a defective and unreasonably dangerous condition when it left Defendant's control.

98.     The product was defectively designed and/or manufactured, creating an unreasonable risk of harm to consumers.  Specifically, the product's Pressure Lid was capable of opening while the cooker was still pressurized, allowing the sudden and dangerous release of scalding steam and liquid.

99.     The product failed to meet applicable safety standards, including but not limited to UL 136 Standard for Safety, Pressure Cookers, approved by ANSI as ANSI/UL 136-2010.  The

product lacked adequate safety mechanisms to prevent the Pressure Lid from opening under pressure.

100.   Defendant Tristar is strictly liable to Plaintiff Suzette Wade for her injuries and damages set forth in this Complaint because:

    a) Defendant Tristar, situated in the chain of commerce, transferred a product in the course of and business; and

    b) The product was used in a manner reasonably anticipated; and

    c) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or,

    d) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning; and,

    e) No other defendant is properly before the court and from whom total recovery may be had for plaintiff's claim.

101.   As a direct and proximate result of the defective and unreasonably dangerous condition of the product, Plaintiff Suzette Wade sustained severe burns to her face, torso, causing permanent disfigurement, and resulting in significant pain and suffering.

## SECOND CAUSE OF ACTION

### FAILURE TO WARN

102.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

103.   Defendant Tristar failed to provide adequate warnings or instructions regarding the risks associated with the Emeril Lagasse Pressure AirFryer Plus, including the risk that the Pressure Lid could open while the cooker was still pressurized, causing the release of scalding contents, steam and liquid.

104.   The product's marketing materials and user manual did not sufficiently warn consumers of the potential for the Pressure Lid to open while pressurized or the associated risks of severe burns.

105.   Defendant Tristar knew or should have known of the risks associated with the product but failed to take reasonable steps to warn consumers of these dangers.

106.   As a direct and proximate result of Defendant Tristar's failure to warn, Plaintiff Suzette Wade sustained severe burns to her face, torso and arms, causing permanent disfigurement, and resulting in significant pain and suffering.

## THIRD CAUSE OF ACTION

### NEGLIGENCE

107.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108.   Defendant Tristar owed a duty of care to design, manufacture, and sell a safe product, including the Emeril Lagasse Pressure AirFryer Plus.

109. Defendant Tristar breached this duty by negligently designing, manufacturing, and selling the product, including but not limited to:

    a) Failing to design the product with adequate safety mechanisms to prevent the Pressure Lid from opening while under pressure;

    b) Failing to manufacture the product in compliance with applicable safety standards; and,

    c) Failing to provide adequate warnings or instructions regarding the risks associated with the product.

110. Defendant Tristar's negligence was a direct and proximate cause of Plaintiff Suzette Wade's injuries, including severe burns to her face, torso, and arms, causing permanent disfigurement, and resulting in significant pain and suffering.

### WILLFUL, WANTON, AND IN RECKLESS CONDUCT

111. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

112. Defendant Tristar's conduct is clear and convincing evidence that it acted, or failed to act, willfully, wantonly, and in flagrant disregard for the safety of consumers, including Plaintiff Suzette Wade.

113. Defendant Tristar's conduct is clear and convincing evidence that it acted, or failed to act, with actual malice or conscious wrongdoing, rather than mere negligence.

114. Defendant Tristar knew or should have known of the defects in the Emeril Lagasse Pressure AirFryer Plus and the risks posed to consumers but continued to manufacture, market, and sell the product without taking reasonable steps to remedy the defects or to warn consumers of the risks.

**DAMAGES**

115.   As a direct and proximate result of the actions, conduct, and failure to act, of Defendant Tristar, described above, Plaintiff Suzette Wade suffered serious personal injuries and damages, including medical expenses, physical pain and suffering, mental pain, suffering and anguish, and permanent disfigurement, which total more than $75,000, exclusive of interest and costs.

116.   On or about January 28, 2023, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid opening while the pressure cooker was still under pressure, allowing its scalding hot contents to erupt from the pressure cooker and onto the Plaintiff.

117.   Plaintiff Suzette Wade's injuries and disfigurement are permanent.

**WHEREFORE**, Plaintiff Suzette Wade respectfully requests that this Court enter judgment in her favor and against Defendant Tristar Product, Inc., and award the following relief:

a)   Compensatory damages in an amount to be determined at trial, but in excess of $75,000, exclusive of interest and costs, including but not limited to damages for past medical expenses, pain and suffering, emotional distress, mental anguish, and permanent disfigurement;

b)   Costs of suit, including reasonable attorney's fees, as may be allowed by Missouri law;

c)   Pre-judgment interest as allowed by Missouri law;

d)   Post-judgment interest as allowed by Missouri law;

e)   All taxable court costs, and;

f)   Such other damages and further relief as supported by the evidence and as the Court deems just and proper.

**PLAINTIFF SUZETTE WADE DEMANDS A TRIAL BY JURY**

Respectfully submitted this 4th day of March 2026.

/s/ *George E. McLaughlin*
George E. McLaughlin, 16364 (CO)
McLaughlin Law Firm, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
720-420-9800
GEM@McLLF.com
*Attorney for Plaintiff*